Chief Judge Breitel.
This is a proceeding brought to prohibit respondent, a Judge in the Criminal Court, from requiring petitioner, a Roman Catholic priest, to change his clerical garb before appearing as defense counsel in a criminal jury trial. Special Term granted the petition and prohibited the Presiding Judge from enforcing his order. The Appellate Division reversed, one Justice dissenting, and dismissed the proceeding on the merits. Petitioner appeals.
The preliminary question is whether prohibition under CPLR article 78 lies. If it does, the issue becomes whether the court’s direction violated petitioner’s right to free exercise of religion.
There should be an affirmance.
Prohibition is available to restrain an inferior court or Judge from exceeding its or his powers in a proceeding over which the court has jurisdiction. While a court has authority to regulate the conduct and appearance of counsel in proceedings before it, that authority is not unlimited. In exercising the power to regulate conduct and appearance, a court may not violate the constitutional right of counsel to free exercise of religion. Petitioner has presented a substantial claim that the Judge in the Criminal Court has exceeded his powers. Thus, petitioner should be able, in the first instance, to seek redress by prohibition.
The free exercise of religion is a highly protected interest but is not absolute. The incidental burden on petitioner’s freedom to exercise his religion must be balanced against the State’s paramount duty to insure a fair trial in a criminal action for both defendant and the People. In striking the balance it is concluded that the performance of the State’s paramount duty to insure a fair trial may not be substantially jeopardized because of petitioner’s right, however significant, to free exercise of his religion.
* * *
Petitioner has been an ordained Roman Catholic priest for 25 years. Admitted to the Bar in 1973, petitioner is a lawyer employed for his second year by the Legal Aid Society. He was assigned by the society to represent an indigent defendant in a criminal jury trial in the case of the People against Cecilia Daniels in the Criminal Court of the City of New York. *578 Defendant Daniels was charged with an assault on her child’s school teacher and is free on parole.
On January 7, 1974, when petitioner appeared for trial, the trial prosecutor objected to proceeding while petitioner was dressed in clerical garb. The objection was based upon a concern that petitioner’s clerical costume might influence even one juror, and perhaps prejudice a juror for or against the defendant. Petitioner protested; he stated that he had always worn clerical garb at law school, at his appearance before the Committee on Character and Fitness, at his admission to the Bar, and at all previous court appearances. He acknowledged, however, that he had never before represented a client at a jury trial. Petitioner also stated that he had been "designated” by his bishop to appear in court as a Catholic priest wearing his clerical garb. In opposing the trial assistant’s objection, petitioner argued that a directed removal of his clerical garb by the court would violate his client’s right to be represented by counsel of her own choice, and would also violate his right to free exercise of religion.
After considerable colloquy, the court directed that, unless petitioner were to remove his clerical collar, he would not be permitted to continue as defense counsel. The court’s directive was grounded in its expressed concern that members of the jury might be prejudiced by the appearance of petitioner in his clerical costume, and therefore a fair trial could not be assured. Petitioner refused to remove his clerical collar and instituted the present proceeding. The trial in the criminal action, although not stayed, has never taken place. In his petition, petitioner contended only that the judicial direction to remove his clerical collar denied him his constitutional right to free exercise of religion.
* * *
The "ancient and just” writ of prohibition is rooted deep in the common law. Originally used by the English king to curb the powers of ecclesiastical courts, prohibition has evolved into a basic protection for the individual in his relations with the State (see Appo v People, 20 NY 531, 541-542; Wolfram, The "Ancient and Just” Writ of Prohibition in New York, 52 Col L Rev 334, 338-353; Third Annual Report of N. Y. Judicial Council, 1937, p 137 et seq.; see, also, 23 Carmody-Wait, 2d, New York Practice, § 145:216, p 792).
It is well settled, and has been restated many times, that prohibition is available both to restrain an unwarranted assumption of jurisdiction and to prevent a court from exceeding *579 its authorized powers in a proceeding over which it has jurisdiction (see, e.g., CPLR 7803, subd 2; Matter of Nigrone v Murtagh, 36 NY2d 421, 423-424; Matter of State of New York v King, 36 NY2d 59, 62; Matter of Roberts v County Ct. of Wyoming County, 34 NY2d 246, 248; Matter of Proskin v County Ct. of Albany County, 30 NY2d 15, 18; Matter of Lee v County Ct. of Erie County, 27 NY2d 432, 436-437; Matter of Hogan v Culkin, 18 NY2d 330, 336; Appo v People, 20 NY 531, 541, supra). The extraordinary remedy of prohibition is never available merely to correct or prevent trial errors of substantive law or procedure, however grievous (see, e.g., Matter of State of New York v King, supra, at p 62; see, generally, 23 Carmody-Wait, 2d, New York Practice, op. cit., § 145:232, p 831 et seq.). The orderly administration of justice requires that correction of litigation errors merely be left to the ordinary channels of appeal or review. Otherwise one would erect an additional avenue of judicial scrutiny in a collateral proceeding and thus frustrate the statutory or even constitutional limits on review (see, e.g., Matter of State of New York v King, supra, at pp 63-64).
If, however, a court acts without jurisdiction, or acts or threatens to act in excess of its powers, other principles are applicable. Prohibition is not mandatory, but may issue in the sound discretion of the court (see, e.g., Matter of Hogan v Court of Gen. Sessions of County of N. Y., 296 NY 1, 8; Matter of Culver Contr. Corp. v Humphrey, 268 NY 26, 39). In exercising this discretion, a number of factors should be considered.
The gravity of the harm which would be caused by an excess of power is an important factor to be weighed (see Matter of Culver Contr. Corp. v Humphrey, 268 NY 26, 40, supra; see, also, 23 Carmody-Wait, 2d, New York Practice, op. cit., § 145:216, pp 793-794). Also important, but not controlling, is whether the excess of power can be adequately corrected on appeal or by other ordinary proceedings at law or in equity (see, e.g., Matter of State of New York v King, 36 NY2d. 59, 62, supra; Matter of Roberts v County Ct. of Wyoming County, 34 NY2d 246, 249, supra).
If an adequate remedy is available, the burdening of judicial process with collateral proceedings, interruptive of the orderly administration of justice, would be unjustified. If, however, appeal or other proceedings would be inadequate to prevent the harm, and prohibition would furnish a more complete and *580 efficacious remedy, it may be used even though other methods of redress are technically available (see, e.g., Matter of Lee v County Ct. of Erie County, 27 NY2d 432, 437, supra; Matter of Culver Contr. Corp. v Humphrey, 268 NY 26, 40, supra). For example, to force a person, faced with a court acting or threatening to act without jurisdiction, or in excess of its powers, to proceed in contempt, and to remain confined until "ultimate justice” is obtained upon appeal in habeas corpus proceedings, would be to undermine the very reason for the remedy (see People ex rel. Livingston v Wyatt, 186 NY 383, 396 [E. T. Bartlett, J., dissenting], contra, p 394; see, generally, Wolfram, 52 Col L Rev 334, op. cit., pp 342-344).
On this analysis, it is crucial to distinguish between an error in procedure or substantive law during a litigation and the arrogation of power which is subject to correction by prohibition. Thus, even constitutional issues involving errors of substantive or procedural law are not cognizable by way of prohibition (see, e.g., Matter of Blake v Hogan, 25 NY2d 747, 748; Matter of Watts v Supreme Ct. of Tioga County, 36 AD2d 17, 18, mot for lv to app den 28 NY2d 714). If, however, a court acts without jurisdiction, or acts or threatens to act in excess of its powers, and it affirmatively appears that this will be done in violation of a person’s, even a party’s, rights, but especially constitutional rights, prohibition will lie to restrain the excess of power (see Matter of Lee v County Ct. of Erie County, 27 NY2d 432, 437-438, supra; Matter of Kraemer v County Ct. of Suffolk County, 6 NY2d 363, 365; Matter of Abraham v Justices of Supreme Ct. of N. Y. County, 37 NY2d 560; Matter of Scott v McCaffrey, 12 Misc 2d 671, 674).
True, there is no sharp line between a court acting in error under substantive or procedural law and a court acting in excess of its powers, if only because every act without jurisdiction or in excess of its powers in a proceeding over which it has jurisdiction of necessity involves an "error of law”. But the absence of bright lines of demarcation in the law is not unusual; man’s language and capacity to conceptualize is not perfect. The fact is that in extreme enough cases the distinction is easily apparent. At one extreme, a trivial error in excess of jurisdiction may be just that, trivial, and hardly worthy of treatment as an excess of power. On the other hand, at the other extreme, a gross abuse of power on its face and in effect may be in reality so serious an excess of power incontrovertibly justifying and requiring summary correction. A good *581 example of the last was the gross, unprecedented, and even suspect as to motivation, direction to disclose an entire transcript of a Grand Jury investigation in a case involving limited issues (see Matter of Proskin v County Ct. of Albany County, 30 NY2d 15, 18-19, supra). The law generally and the extraordinary remedy of prohibition has not developed as a linguistic exercise but as a response in language and concept to the recognized needs and accommodations in a society governed by the rule of law. There is a larger logic than that delineated by etymology. To eliminate or minimize the concept of an excess of power, on presumed verbalistic grounds, would undermine a common-law principle of ancient standing and the continuous statutory statement of that principle (see Appo v People, 20 NY 531, 541, supra; CPLR 7803, subd 2; Civ Prac Act, § 1296, subd 2).
Petitioner does not, as he could not, dispute the power of the court to regulate generally counsel’s conduct and appearance (see Matter of Peck v Stone, 32 AD2d 506, 508; People v Rainey, 224 Cal App 2d 93, 95-98; cf. People ex rel. Karlin v Culkin, 248 NY 465, 473). Instead, petitioner argues that the trial court exceeded its powers in directing removal of his clerical garb, a direction allegedly violative of petitioner’s right to free exercise of religion. He offers a "substantial” argument in support of his contentions. True, upon reaching the merits, the court may decide the issue adversely to petitioner. But this would not foreclose the remedy. When a petitioner, whether party or not, but especially where one is not a party, presents an arguable, substantial, and novel claim that a court has exceeded its powers because of a collision of unquestioned constitutional principles, he may, in the first instance, seek redress by prohibition.
Thus, petitioner seeks to vindicate his right to free exercise of religion, certainly a preferred right included among the great human rights in a free and open society (see Matter of Brown v McGinnis, 10 NY2d 531, 536; US Const, 1st Amdt; NY Const, art I, § 3). With respect to such a preferred right, and its safeguarding, prohibition is a "more complete and efficacious remedy” to redress the alleged excess of power, if that it were. Petitioner should not be compelled to test the alleged excess of power in such a significant area of constitutional right by proceeding in contempt of court and habeas corpus proceedings. Nor is appeal in the criminal action an adequate remedy since his client, the defendant, might be *582 acquitted or a conviction reversed on another ground, or she might refuse to take an appeal. Moreover, on a conviction there would be an additional obstacle to establish, namely, that the "error” was material, a condition difficult to surmount in the particular criminal action since as an indigent with assigned counsel she had a right to counsel but lacked the right to stipulate who that counsel should be (see People v Brabson, 9 NY2d 173, 180-181). Thus, prohibition should be available in the discretion of the court to test whether petitioner is entitled to restraint of an inferior court from directing removal of petitioner’s clerical garb.
Having determined that the remedy of prohibition is appropriate, the merits of the application may be addressed. The appearance of a lawyer in court is the occasion for him to discharge a particular function in the administration of justice. His function is not to displace his client but to serve as his agent in the litigation. It is rarely good advocacy and never quite ethical for the lawyer to substitute himself for the client before jury or court. That this may happen because of the limitations of human nature does not undermine the imperative of the rule. To the extent to which it is possible, the improper displacement of client by attorney should be minimized by elimination of egregious assumed or real idiosyncracies of dress, appearance, status, or conduct. The purpose is, at least as to outward appearances, to place counsel in their proper relation toward their clients.
"A Judge must have and does possess the power to enforce order and control behavior in the courtroom; and, as an officer of the court, an attorney is subject to the control and direction of the Judge” (Matter of Peck v Stone, 32 AD2d 506, 508, supra; see People ex rel. Karlin v Culkin, 248 NY 465, 470-471, supra; Code of Judicial Conduct, Canon 3, subd A, par [2]). Thus, the lawyer is subject to the regulation of the Judge in matters of attire when that regulation is reasonably related to the preservation of order and decorum in the courtroom, the protection of the rights of parties and witnesses, and generally to the furtherance of the administration of justice (see People v Rainey, 224 Cal App 2d 93, 95-98, supra; cf. People v Jelke, 308 NY 56, 63).
Primary, of course, in a criminal action, is the right of both the defendant and the People to a fair and impartial trial. Indeed, a fair trial is a paramount constitutional condition in *583 any judicial proceeding; it is the foundation of a criminal trial, if justice be its essence.
Freedom of exercise of religion is not an absolute, albeit a preferred right (Matter of Brown v McGinnis, 10 NY2d 531, 536, supra; see NY Const, art I, § 3). While freedom to believe is absolute, freedom to act is not. Religious practices are subject to regulation for the protection of society (see Matter of Brown v McGinnis, supra, at p 536).
The Supreme Court cases construing the freedom of exercise clause are not particularly helpful. In Sherbert v Verner (374 US 398, 403) the court stated that an incidental burden on the right to free exercise of religion may be justified by a " 'compelling state interest in the regulation of a subject within the State’s constitutional power to regulate’ ” (citing NAACP v Button, 371 US 415, 438). In some of the cases, religious practices posed a substantial threat to public safety, peace or order (see, e.g., Cleveland v United States, 329 US 14, 19; Prince v Massachusetts, 321 US 158, 166-167; cf. People v Sandstrom, 279 NY 523, 530). In others, religious practices conflicted with interests deemed not of paramount importance to the State (see, e.g., Wisconsin v Yoder, 406 US 205, 228-229; Sherbert v Verner, 374 US 398, 406-407, supra). In the instant case, however, the particular limited religious practice has been found to conflict with the State’s paramount duty to insure a fair and impartial trial. The respective interests must be balanced to determine whether the incidental burdening is justified (see People v Woodruff, 26 AD2d 236, 238, affd 21 NY2d 848).
A clergyman is accorded high status by most members of our society. Whatever the character of the man or woman who wears the cloth, the cleric is accorded a measure of respect and trust unlike that which is given to those of other vocations. Consequently, it is understandable, but not condenable, that a juror might view differently statements made by a member of the clergy than those made by others, and might ascribe a greater measure of veracity and personal commitment to the rightness of his client’s cause.
On the other side of the issue it is most unfortunate, but yet undeniable, that there exist , religious prejudices. These prejudices, often insidious and usually denied, might spill over from a lawyer-cleric of whatever faith to the client. Although petitioner’s client said she wished him to remain as her attorney despite this possibility, it is not the defendant in a *584 criminal action but the court which must insure a fair trial. So fundamental is the guaranty of a fair trial that even in the absence of objection or exception by defendant or counsel an unfair trial must result in a reversal of a conviction (see People v McLucas, 15 NY2d 167, 172; People v Bradner, 107 NY 1, 4-5).
The trial court in directing change of petitioner’s garb if he persisted in trying the case before a jury, acted to preserve the right of both the defendant and the People to a fair trial. In so doing, the court of necessity limited defense counsel’s right to free exercise of religion in that he was compelled to remove the symbol of his religious calling, a requirement of his calling which is not unconditional or beyond dispensation. The risk that a fair trial could not be had outweighed this incidental limitation.
The problem presented by the case is not facilitated in any direction by petitioner’s recital that he was "designated” by his bishop to wear his clerical garb as a lawyer. While this designation or direction is uncontroverted, the record does not establish in any degree why this designation or direction was made, or whether it was absolute or conditional. Nor does petitioner now make much of the point, assuming that he still relies on it, which one should assume. But assuming that that is so may not change the result in the case, once it is determined reasonably that the paramount judicial duty to assure a fair trial is involved.
Nor does this appeal raise the problem of nonclerical religious practices, symbols, and expressions which might be presented, or which might invoke absolutes of religious doctrine, in the tableau of a judicial trial. Although even then egregious circumstances might be presented which arguably and reasonably could impair the provision for a fair trial. But no such question is now involved, such as the propriety of head coverings, nonclerical religious garb, common religious symbols worn by devotees of a faith, or abstentions from oath taking or other incidents of a judicial trial not involving the displacement of a client, whether it be the People or the defendant in a criminal jury trial, by a member of the clergy of whatever faith who also doubles as a lawyer.
Accordingly, the order of the Appellate Division should be affirmed, without costs.