Chief Judge Breitel
(dissenting). This is another in the endless attempts to obtain premature appellate review of intermediate court orders in criminal cases by way of an extraordinary collateral civil proceeding (Matter of Cunningham v Nadjari, 39 NY2d 314; Matter of Alphonso C., 38 NY2d 801; Matter of Santangello v People, 38 NY2d 536; Matter of Nigrone v Murtagh, 36 NY2d 421; Matter of State of New York v King, 36 NY2d 59; Matter of Lopez v Justices of Supreme Ct., 36 NY2d 949; Matter of Scranton v Supreme Ct. of State of N. Y., 36 NY2d 704; Matter of Paciona v Marshall, 35 NY2d 289; Matter of Wroblewski v Ricotta, 35 NY2d 745). Time and time again, this court has made unequivocally clear *21 that, as a matter of law, and even more certainly as a matter of discretion, an article 78 proceeding brought to prohibit a criminal prosecution should be entertained only in narrow and extraordinary instances (see, e.g., La Rocca v Lane, 37 NY2d 575, 578-581, cert den 424 US 968; Matter of Nigrone v Murtagh, 36 NY2d 421, 423-424, supra; Matter of State of New York v King, 36 NY2d 59, 62, supra).
As stated in Matter of State of New York v King (36 NY2d 59, 63, supra): "the underlying policy is to limit appellate proliferation in criminal matters, sometimes to the seeming detriment of the defendant and sometimes to the detriment of the People. Litigation may be compounded unduly by protracted and multifarious appeals and collateral proceedings frustrating the speedy determination of disputes. Moreover, the frustration may be accomplished by skillful manipulation of appeals and collateral proceedings by those interested in delay.”
The instant proceeding is further illustrative of the frustration of the speedy determination of a criminal action. Indicted in November, 1974, petitioner, eschewing an available statutory remedy to move the Appellate Division to dismiss the indictment under subdivision 2 of section 149 of the Judiciary Law, instead, in December, 1974, moved before the late Mr. Justice Murtagh, then presiding at Extraordinary Term, to dismiss the indictment because the Special Prosecutor had no jurisdiction to prosecute the crime for which he had been indicted. After denial of this motion on February 6, 1975, petitioner moved for reargument, and after reconsideration, the motion to dismiss was again denied on December 19, 1975, with leave to renew before the trial court. The motion to dismiss was made before Judge Jones, to whom the case was assigned for trial, and it was denied on February 20, 1976. Switching strategy, on March 16, 1976, petitioner moved to dismiss the indictment on speedy trial grounds, but this was denied. On March 22, 1976, some 16 months after the indictment was filed, petitioner, again switching strategy, instituted the present collateral article 78 proceeding to litigate again the very issue thrice litigated before in the criminal action.
It would be jurisprudential folly to countenance these diversive tactics, let alone permit them to succeed, especially when a direct remedy once available under section 149 of the Judiciary Law was not pursued. The net effect would be to allow merit-avoiding strategies and collateral proceedings to *22 frustrate the guilt-determining process. As stated in Matter of State of New York v King (36 NY2d 59, 65, supra), the use of such tactics may be a "credit to man’s ingenuity but a disabling discredit to the jurisprudence.”
Nevertheless, despite these admonitions, petitioner contends that prohibition lies to challenge the power of the Special Prosecutor to prosecute him for the crime for which he was indicted and the power of trial court to try him.
The extraordinary remedy of prohibition is never available to correct errors of procedural or substantive law, however grievous. It is not a substitute for an appeal or the direct motion to the Appellate Division provided in the Judiciary Law. Instead, prohibition is available, only where there is a clear legal right, to restrain an unwarranted assumption of jurisdiction or to prevent a court (if a court is involved) from exceeding its authorized powers in a proceeding over which it has jurisdiction. (La Rocca v Lane, 37 NY2d 575, 578-579, supra, and cases cited.) When a petitioner presents a "substantial” claim that a court or an officer is acting without jurisdiction or power, or in excess of power, prohibition will lie, in the first instance, to restrain the excess of power. While the court, upon reaching the merits, may decide the issue adversely to petitioner, that does not foreclose the remedy (pp 580-581).
Petitioner offers no "substantial” claim that the trial court or the Special Prosecutor have exceeded their powers and thus prohibition does not lie. The majority concedes that Judge Jones has the power to try petitioner, as it must. Judge Jones is assisting at an Extraordinary Term of Supreme Court established by order of the Governor (NY Const, art VI, § 27; Judiciary Law, § 149, subd 1). An Extraordinary Term is an additional term of Supreme Court and possesses the same jurisdiction as any other term of that court (Matter of Reynolds v Cropsey, 241 NY 389, 395-396; People ex rel. Saranac Land & Timber Co. v Extraordinary Special & Trial Term of Supreme Ct., 220 NY 487, 492). Consequently, it states the axiomatic that the Supreme Court, a court of general jurisdiction, has the power to try a bribery case.
A prosecutor is the epitome of an officer of the executive branch. He is powerless to make judicial or quasi-judicial determinations, albeit his discretion is broad indeed as is true of many administrative officers. To bring his office within the judicial umbrella in order to sustain prohibition because he is often characterized as a "quasi-judicial” officer is to render no *23 service to the analysis, any more than to say that because a lawyer is an officer of the court he is vested with some kind of judicial office. The fact is that the characterization of "quasi-judicial” officer is to demark his responsibilities from those of any lawyer. It expresses the mandate that his responsibility is not only to investigate and prosecute but to do so subject to the imperatives of his responsibilities toward the public, the courts, and the persons he brings to heel on charges of crime, and that he do so with the same degree of objectivity and neutrality that one expects of a court (see People v Fielding, 158 NY 542, 547; Matter of McDonald v Goldstein, 273 App Div 649, 651). It does not make him a judicial officer.
Moreover, the few cases in which the prosecutor is joined as a respondent in prohibition together with a court or Judge, the issue has rarely been considered serious enough to treat because the prohibition lay against the court and Judge as in the line of double jeopardy cases (see, e.g., Matter of Abraham v Justices of N. Y. Supreme Ct., 37 NY2d 560; Matter of Grillo v Justices of Supreme Ct., 34 NY2d 990; Matter of Nolan v Court of Gen. Sessions, 15 AD2d 78, affd 11 NY2d 114; cf. Matter of Simonson v Cahn, 27 NY2d 1 [waiver of indictment]; but see People ex rel. Luetje v Ketcham, 45 Misc 2d 802, 804).
With respect to the Special Prosecutor’s "power” or "jurisdiction” to prosecute this case, a more refined analysis is required. No one disputes the Special Prosecutor’s power to prosecute "any and all acts and omissions and alleged acts and omissions by any person occurring * * * in the County of Queens in violation of any provision of State or local law and arising out of, relating to or in any way connected with corrupt acts or omissions by a public servant or former public servant arising out of, relating to or in any way connected with the enforcement of law or administration of criminal justice in the City of New York” (Executive Order No. 57, subd I, par [b]; 9 NYCRR 1.57).
Even if one assumes that petitioner is correct in his contention that the Special Prosecutor may. not lawfully prosecute this case, in light of the broad grant of prosecutorial power contained in the order, an overstepping of "jurisdiction” by the Special Prosecutor in this case could, at most, arguably be characterized an "error of law”, and not as an "excess of power”, either by him or the nisi prius courts which three times denied petitioner’s motion. The court’s recent admoni *24 tion in Matter of State of New York v King (36 NY2d 59, 62, supra) applies: "errors of law, which of course may be verbalized, but incorrectly, as excesses of jurisdiction or power, are not to be confused with a proper basis for using the extraordinary writ”.
Moreover, even if characterized as an "excess of power”, in light of the broad language of the Executive Order, it may not be said that the prosecution of petitioner would rise to the level of "a gross abuse of power on its face and in effect * * * so serious an excess of power incontrovertibly justifying and requiring summary correction” (La Rocca v Lane, 37 NY2d 575, 580, supra). Hence, prohibition does not lie and the petition should have been dismissed by the Appellate Division. Petitioner’s proper remedy would be to raise his claim on an appeal from a judgment of conviction, if that should eventuate.
As the majority holds that prohibition lies and has reached the merits, if I do reach the merits, I am constrained to disagree. In granting prohibition and dismissing the indictment, the Appellate Division abused its discretion as a matter of law.
The applicable principles were restated in La Rocca v Lane (37 NY2d 575, 579-580, supra):
"Prohibition is not mandatory, but may issue in the sound discretion of the court (see, e.g., Matter of Hogan v Court of Gen. Sessions of County of N. Y., 296 NY 1, 8; Matter of Culver Contr. Corp. v Humphrey, 268 NY 26, 39). In exercising this discretion, a number of factors should be considered.
"The gravity of the harm which would be caused by an excess of power is an important factor to be weighed (see Matter of Culver Contr. Corp. v Humphrey, 268 NY 26, 40, supra; see, also, 23 Carmody-Wait, 2d, New York Practice, op. cit., § 145:216, pp 793-794). Also important, but not controlling, is whether the excess of power can be adequately corrected on appeal or by other ordinary proceedings at law or in equity (see, e.g., Matter of State of New York v King, 36 NY2d 59, 62, supra; Matter of Roberts v County Ct. of Wyoming County, 34 NY2d 246, 249, supra).
"If an adequate remedy is available, the burdening of judicial process with collateral proceedings, interruptive of the orderly administration of justice, would be unjustified. If, however, appeal or other proceedings would be inadequate to *25 prevent the harm, and prohibition would furnish a more complete and efficacious remedy, it may be used even though other methods of redress are technically available (see, e.g., Matter of Lee v County Ct. of Erie County, 28 NY2d 432, 437, supra; Matter of Culver Contr. Corp. v Humphrey, 268 NY 26, 40, supra).”
Petitioner had litigated the issue of the Special Prosecutor’s power in the criminal action three times before instituting this article 78 proceeding. He therefore not once, but several times, preserved the issue for appeal after conviction.
Of course, the requirement of standing trial and the possibility of conviction is not sufficient "harm” warranting prohibition (see, e.g., Matter of Nigrone v Murtagh, 36 NY2d 421, supra). Double jeopardy is the rare exception and the application of the remedy of prohibition in that instance is of relatively recent vintage (see Matter of Kraemer v County Ct. of Suffolk County, 6 NY2d 363, 365). And, although upon conviction, by operation of statute, petitioner would be disbarred, this too is insufficient harm warranting prohibition (Matter of Nigrone v Murtagh, supra). Instead, the possible harm meriting summary correction by prohibition must be of the magnitude of a double jeopardy, a perversion of the entire criminal action or a collision of unquestioned constitutional rights (see, e.g., Matter of Abraham v Justices of N. Y. Supreme Ct., 37 NY2d 560, 564, supra, and cases cited; Matter of Proskin v County Ct. of Albany County, 30 NY2d 15, 18-19; La Rocca v Lane, 37 NY2d 575, 581, supra). The risk of such harm was not present in the instant case.
Moreover, as noted earlier, there was an adequate alternative remedy at the Appellate Division available to petitioner, but one which he chose not to use. Subdivision 2 of section 149 of the Judiciary Law authorizes a defendant to move the Appellate Division to dismiss the indictment (see People v Sam, 49 AD2d 732; Matter of Moritt v Nadjari, 46 AD2d 784, n). Such a motion could have been entertained, as a direct, forthright, and unambiguous remedy, upon the ground that the Special Prosecutor was not a proper person before the Grand Jury and thus the Grand Jury proceedings were defective (CPL 190.25, subd 3; 210.20, subd 1, par [c]; 210.35, subd 5; cf. People ex rel. Hamway v Truesdell, 261 App Div 824). If such a motion were successful, the matter could have been resubmitted to another Grand Jury or, more likely in this case, transferred to the appropriate prosecutor (CPL 210.20, *26 subd 4; cf. People v Ferdinando, 40 AD2d 714), or the Special Prosecutor would have obtained an amendment to the Executive Order as he did quite recently (Executive Order No. 56.20; 9 NYCRR 1.56.20 [Bronx County]). Petitioner’s failure to pursue his statutory remedy alone would bar the extraordinary civil proceeding of prohibition (cf. Matter of Paciona v Marshall, 35 NY2d 289, 290, supra).
People v Grennan (283 App Div 987, affd 307 NY 691) and People v Glen (30 NY2d 252, 262-263), cited by the majority, do not support the argument that, once petitioner’s motions to dismiss had been denied by Extraordinary Term, he would be precluded from seeking relief from the Appellate Division under section 149 of the Judiciary Law. In the Grennan case (supra), the defendant applied to the Appellate Division for bail after a Special Assistant Attorney-General had secured an order from Extraordinary Term fixing bail. The Appellate Division stated that Extraordinary Term’s order did not preclude defendant from seeking bail from the Appellate Division, but denied defendant’s application on the merits. In the Glen case (supra), the court condemned the practice of making successive motions to the nisi prius court to suppress evidence without a showing of new additional evidence of unlawfulness. Thus, neither case held that the Appellate Division is precluded from entertaining a de novo motion under section 149 of the Judiciary Law because Extraordinary Term has denied a motion to dismiss.
But there is a more fundamental reason why prohibition should have been denied: the Special Prosecutor does, in fact, have the power to prosecute petitioner for the crime of offering a bribe to a police officer to influence his testimony in an impending civil proceeding. Indeed, this appears to have been the basis for the Appellate Division, First Department, denial of an application for an order of prohibition in a similar case involving the bribery of two policemen who only feigned acceptance of the bribe (Matter of Burman v Murtagh, 48 AD2d 767).
The Special Prosecutor’s authority emanates from subdivision 2 of section 63 of the Executive Law, which empowers the Attorney-General to act in whatever matters the Governor requires. The only limitation is that "specified in such requirement” (see People v Welz, 70 Misc 183, 184).
As noted earlier, the language of the requirement (Executive Order No. 57; 9 NYCRR 1.57 [Queens County]) delineating *27 the Special Prosecutor’s authority is broad. The Special Prosecutor is authorized to prosecute "any and all acts and omissions and alleged acts and omissions * * * relating to or in any way connected with corrupt acts or omissions by a public servant * * * arising out of, or relating to or in any way connected with the enforcement of law or administration of criminal justice”.
There is no dispute that petitioner is a "person” or that Officer Gaughan is a "public servant” within the meaning of the order. The crimes charged are undisputably "corrupt acts” (Executive Order No. 57, subd III, par [c], cl [3], subdcl [iii]). Petitioner contends, however, that since the police officer only feigned acceptance of the bribe, his was not a "corrupt act or omission by a public servant”. In any event, petitioner argues, because the crimes involved the influencing of the officer’s testimony in an impending civil case they were unrelated to the "enforcement of law or administration of criminal justice”.
The majority has correctly rejected petitioner’s first argument. This argument ignores the expansive purpose of the Executive Order. The Commission to Investigate Allegations of Police Corruption in the City of New York (Knapp Commission) recommended appointment of a Special Prosecutor to eliminate "patterns of corruption” (Knapp Commission Report, at pp 15-17). The commission emphasized that "temptations to engage in corrupt activity on the part of the police and the public must be reduced by subjecting both to significant risks of detection, apprehension, conviction, and penalties” (at p 17). A principal corrupt activity found to be widespread in the city was bribery of public officials, particularly police officers. To combat this corruption the commission recommended a "campaign against bribers” (at p 21). If petitioner is guilty, he was a would-be briber, and it is not unlikely that that may have been a pattern of his conduct, not discovered before because corrupt officers learned from him or taught him the "other way”.
Thus, one of the primary purposes for the establishment of the Special Prosecutor’s office was to eliminate the bribery of public officials. Since petitioner allegedly offered the bribe to the police officer to influence his testimony, he was no less a briber of a public official, and therefore a target of the "campaign against bribers”, because the police officer feigned acceptance to catch a briber and was not actually "corrupt”. It *28 would be illogical and unrealistic, in view of the purpose and breadth of the Executive Order, to bifurcate the Special Prosecutor’s jurisdiction according to the mental state of the bribe receiver.
Petitioner’s argument that his alleged crime was unrelated to the "enforcement of law or the administration of criminal justice” because the bribe was offered in connection with an impending civil case is also unpersuasive. A police officer’s principal duty is to enforce the law, including traffic ordinances, with the invocation of criminal sanctions when appropriate. Section 603 of the Vehicle and Traffic Law requires a policeman to investigate an automobile accident and fill out an accident report. This was precisely the police activity involved in the instant case, investigating, reporting an automobile accident, and issuing a summons or making an arrest if indicated. Perjurious testimony by the police officer regarding the accident would manifestly involve corruption related to the officer’s law enforcement duties, whether given in a civil or criminal court.
But much of this discussion of language refinements would be bootless except for the nature of the arguments addressed to them by petitioner. Most important, and indeed conclusive, of the breadth of the language of the Executive Order is its traditional "cowcatcher” to the engine of authority, that is, "any and all acts and omissions and alleged acts and omissions * * * relating to or in any way connected with the enforcement of law or administration of criminal justice”. It is just that kind of language which sweeps up, and is intended to sweep up, all acts however tenuously related to the enforcement of law. It is language used exactly for the purpose of avoiding the over-refined, attenuated reasoning, and off-the-merits attacks on investigations and prosecutions. It serves to the same effect as a general related purpose clause in a certificate or charter of incorporation. So that even if one would argue with the distinction earlier made, the catch-all clause swallows up whatever resistance is left—or at least it should. Indeed, had some of the specific language suggested by petitioner, such as that relating to "pretenses” been used, under the hoary maxim of ejusdem generis the catch-all clause would have been restricted. There are fewer, if any, more broadening clauses than "in any way” or words like "relating” or "connected”, not only in this context but in any *29 other. It is difficult to formulate language more embracing than this and yet take in any conduct relating to or in any way connected with the enforcement of law.
Equally supportive of the Special Prosecutor’s authority to prosecute petitioner is the practical construction given the Executive Order by three Governors.
An Executive Order is ambulatory, and is alterable or revocable at the pleasure of the Governor. Indeed, on numerous occasions, three Governors have seen fit to reaffirm, amend, or limit the scope of the original Executive Order for various purposes (see, e.g., 9 NYCRR 1.57.01; 1.57.02; 1.57.03; 1.57.04; 1.57.05; 1.57.06; 1.57.07; 1.63; 3.21; 3.26 [Queens County]; 1.55.01 [NY County]; 1.56.01 [Bronx County]; 1.58.01 [Kings County]; 1.59.01 [Richmond County]). Many of these orders transferred, for reasons of practicality, cases from the Special Prosecutor to the local District Attorneys to prosecute. The majority of these orders transferred cases involving bribery of a police officer who feigned acceptance or immediately arrested the briber (e.g., 9 NYCRR 1.57.01). Thus, by transferring such cases the Governor implicitly recognized and confirmed the Special Prosecutor’s authority to initiate and prosecute this type of case. This practical construction of the original order by three Governors is persuasive evidence that the Special Prosecutor has the power to prosecute petitioner.
Moreover, it is significant that in none of the orders affecting the original order has the language delineating the Special Prosecutor’s prosecutorial authority ever been altered. Diplomatic ententes among affected local prosecutors and the Special Prosecutor of course do not have the force of law and are hardly interpretive of restrictions or limitations of the Executive Order. Indeed, despite the present Governor’s publicized review of the Special Prosecutor’s performance in office, the Governor did not see fit to limit the scope of his power, something he could and can do with a stroke of the pen.
Accordingly, I dissent and vote to reverse the order of the Appellate Division and dismiss the petition.
Judges Gabrielli, Wachtler and Fuchsberg concur with Judge Cooke; Chief Judge Breitel dissents and votes to reverse and dismiss the petition in a separate opinion in which Judges Jasen and Jones concur.
Judgment modified, without costs, in accordance with the opinion herein and, as so modified, affirmed.