Jones, J. (dissenting).
A majority of this court reaches out to conclude that petitioners have demonstrated their right to a writ of prohibition to bar their trial on the indictment handed down by the Kings County Grand Jury. Until today, entitlement to this extraordinary remedy has depended on the applicant’s establishing, on the face of the indictment, the existence of a "clear legal right” to abort the pending criminal proceeding—the prerequisite to the issuance of an order of prohibition (Matter of State of New York v King, 36 NY2d 59, 62). To arrive at its determination, the majority has been forced, however, to go behind the indictment by which these defendants are accused and to rely on an examination of the evidentiary showing made before the Grand Jury. On the basis of such evidence it concludes that the Grand Jury of Kings County lacked geographical jurisdiction to indict for the criminal acts which were committed in New York County.
The indictment here contained all the allegations necessary to confer on the Kings County Grand Jury geographical jurisdiction over the stated violations of subdivisions 1 and 3 of section 448 of the Election Law. By its excursion well beyond the four corners of the indictment the majority has accomplished an unwarranted and inappropriate expansion of the availability of the extraordinary remedy of prohibition, an expansion for which I find no historical predicate and which is quite at variance with the traditionally summary nature of the remedy (Matter of Roberts v County Ct. of Wyoming County, 34 NY2d 246, 248).
When, in the implementation of its indigenous function to bar a court from acting in excess of jurisdiction, prohibition has been employed to prevent proceedings violative of statutory venue provisions, the deficiency in venue has been patent on the face of the accusatory instrument to which the collateral challenge is addressed. Thus, in Matter of Hogan v Culkin (18 NY2d 330), from the surface fact that the writ of habeas corpus directed to a State institution in Dutchess County was returnable in New York County, it was apparent that the venue of the writ was improper, inasmuch as CPLR 7004 (subd [c]) required writs directed to State institutions to be returned in the county of detention. In Matter of Murtagh v Leibowitz (303 NY 311) the information lodged in Kings *320 County against the defendant charged the crime of neglect of duty committed in that county, based on his failure to report to the Mayor of the City of. New York, whose office was in New York County. Because the sole failure to report set forth in the information was a single, indivisible act of omission that occurred only where defendant was bound to make the report, the information itself, without further inquiry, disclosed that Kings County was not a proper place for trial of the crime charged.
Unlike the Hogan and Murtagh cases, the instrument by which petitioners are charged here demonstrates no patent error in venue; quite to the contrary, it sets forth a wholly adequate basis for Kings County’s assumption of geographical jurisdiction under CPL 20.40 (subd 2) and 20.10 (subd 4). The indictment alleges that certain described misconduct by petitioners—the situs of which is undesignated—"had and was likely to have a particular effect upon Kings County and a political subdivision and part thereof and was performed with intent that it would and with knowledge that it was likely to have such particular effect therein”. On the basis of that allegation, and for all else in the indictment, the Grand Jury of Kings County had jurisdiction to return the accusatory instrument (CPL 190.55, 190.60) and the courts of that county had jurisdiction to entertain trial of the charges (CPL 20.40, subd 2). That being so, resort to the extraordinary remedy of prohibition should be foreclosed.
Whether the indictment itself was warranted—i.e., whether there was sufficient evidence to sustain the charge, and in particular whether the petitioners’ conduct in New York County produced consequences having a materially harmful impact upon the governmental processes or community welfare of Kings County such that it had "a particular effect” on that county as defined in CPL 20.10 (subd 4)—can only be determined by an examination of the proof before the Grand Jury. It is in undertaking that examination that the majority departs from the summary nature of prohibition and also permits petitioners to duplicate the process of review available to them under CPL 210.30, pursuant to which a motion to dismiss the indictment for insufficiency of evidence before the Grand Jury may be, and in this case has been, made. Prohibition, the summary remedy available when a clear legal right to abrupt termination of a criminal proceeding has been shown, has not until today been an alternative procedure for *321 challenge and review of sufficiency of Grand Jury evidence (Matter of Miranda v Isseks, 41 AD2d 176).
Bearing in mind the very restricted office of the extraordinary remedy (Matter of State of New York v King, 36 NY2d 59, 62-64, supra), and the desirability, in furtherance of the orderly administration of justice, of avoiding the "erect[ion] [of] an additional avenue of judicial scrutiny in a collateral proceeding” (La Rocca v Lane, 37 NY2d 575, 579), I cannot concur in the expansion of prohibition accomplished in the present case. To tolerate the interruption of criminal proceedings by prohibition in the circumstances of this case is doubly inappropriate. It not only ignores the general principle enunciated in Matter of State of New York v King (36 NY2d, at p 62, supra) "that even if there has been an excess of jurisdiction or power, the extraordinary remedy will not lie if there is available an adequate remedy at law, of which appeal is but one” (surely petitioners can urge on direct appeal from any conviction all contentions they now advance); it also invites the proliferation of collateral attacks which was unanimously condemned by our court in the King case (36 NY2d, at pp 63-64). In my view, under the precedents, on the basis of this indictment and of the challenges to it mounted here by petitioners, prohibition should not lie.
On my analysis, therefore, it would not be necessary to reach the substantive jurisdictional issue as to whether, on the basis of the evidence submitted to the Grand Jury, Kings County had authority to indict and try petitioners for the alleged criminal acts committed in New York County. Were I, however, to reach this underlying issue which the majority finds dispositive, I would have no hesitancy in concluding that Kings County did indeed have such jurisdiction. Our statute, grounded in what has come to be referred to as the "injured forum principle”, provides that: "A person may be convicted in an appropriate criminal court of a particular county * * * [e]ven though none of the conduct constituting [the] offense may have occurred within such county [if] [s]uch conduct had, or was likely to have, a particular effect upon such county * * * and was performed with intent that it would, or with knowledge that it was likely to, have such particular effect therein” (CPL 20.40, subd 2, par [c]). "Particular effect” of an offense is further defined in CPL 20.10 (subd 4): "When conduct constituting an offense produces consequences which, though not necessarily amounting to a result or element of *322 such offense, have a materially harmful impact upon the governmental processes or community welfare of a particular jurisdiction * * * such conduct and offense have a 'particular effect’ upon such jurisdiction.”
The crime here alleged was that petitioners, being persons nominated for or holding public office, corruptly promised to use their official authority and influence to secure for Hans Rubenfeld an office and public employment with the New York City Police Department in return for Rubenfeld’s promise to arrange a dinner and provide financial support for the candidacy of Robert Steingut for Councilman-at-Large in New York City to be elected from Kings County—all in violation of section 448 of the Election Law. Whatever the actual situs of the alleged criminal conduct—whether outside or in Kings County—its direct venal impact would almost exclusively have had a particular effect on Kings County, the county in which the election in question was being held. While New York County, where the alleged criminal transaction occurred, might have a theoretical interest in the integrity of the electoral process, it was an election to be held in Kings County that was the target of the alleged corrupt use of position and authority. The conduct charged would, and here must have been intended to, produce consequences having a materially harmful impact on the governmental processes and community welfare of Kings County. To suggest as does the majority that the vitality of the injured forum statute depends on a "perceptible” injury or offense (whatever the word "perceptible” may mean in this context) (p 317) is to risk emasculation of the statute when such suggestion appears to be no more than a make-weight for the conclusion reached in this case.
Petitioners’ submission, in substance, is that unless the alleged conduct played a significant part in the outcome of the particular election it cannot be said to have had a materially harmful impact on Kings County. They would attach the concept of materiality to the word "impact”. Thus, one should be able, in their view, to escape punishment for corrupt attempts to influence the electoral process in another county unless he was fairly successful in his efforts. The definition of the substantive crime, of course, carries no suggestion that "corrupt use of position or authority” becomes criminal only if it is at least moderately effective. The jurisdictional statute neither adds to nor subtracts from the definition of the substantive crime. It prescribes, in effect, that to permit prosecu *323 tion in a jurisdiction other than that in which the criminal conduct occurred, the conduct must have an impact which is materially harmful in the prosecuting jurisdiction. The evil in election crimes is not that they necessarily affect the outcome of elections; it is that cognizable attempts to affect the outcome, without more, strike at the integrity of the electoral process. Thus, any concrete effort criminally to influence an election in Kings County by very definition has a materially harmful impact on the governmental processes and community welfare in that county. "Materially” modifies "harmful”, not "impact”, and any corrupt use of position or authority, if established, is materially harmful to the electoral process. Thus, in my view, were the issue to be reached I would conclude that Kings County had jurisdiction to indict and try petitioners for the crimes with which they are charged.
Resolution of petitioners’ remaining contention, with regard to the substantive crime—that the position assertedly promised to Rubenfeld was neither an "office or public employment” nor a "public office or place within the contemplation of section 448”—should not and cannot now be resolved. Orderly and adequate opportunity for the initial determination of this issue and for appellate review thereof would be assured under ordinary criminal procedures.
Finally, I note that the analysis and discussion in this opinion proceed of course, as they must, on the basis of the allegations set forth in the indictment. It would not appear until a trial whether there is evidence to support findings that what is alleged to have taken place actually occurred, or just what significance properly should be attached to what did happen. Until there is a conclusion, there is a presumption of innocence.
Accordingly, in the state of the record now before us, because in my view prohibition does not lie, I would reverse the order of the Appellate ^Division and remit the case to that court for entry of an order dismissing the petition to prohibit further proceedings on the indictment.
Judges Gabrielli, Fuchsberg and Cooke concur with Judge Wachtler; Judge Jones dissents and votes to reverse in a separate opinion in which Chief Judge Breitel and Judge Jasen concur.
Judgment affirmed, without costs.