In the Matter of the ROCHESTER POLICE DEPARTMENT, Petitioner, v EUGENE W. BERGIN, a Judge of the Monroe County Court, et al., Respondents.

Fourth Department, June 1, 1979

### APPEARANCES OF COUNSEL

*Louis N. Kash, Corporation Counsel (Jeffrey Eichner* of counsel), for petitioner.

*Lawrence T. Kurlander, District Attorney (Jeffrey Chamberlain* of counsel), respondent *pro se.*

*James L. Kemp,* respondent *pro se.*

*Robert Abrams, Attorney-General (William Goldman* of counsel), for Eugene W. Bergin, respondent.

### OPINION OF THE COURT

CARDAMONE, J.

The Rochester Police Department, as petitioner, has instituted this original article 78 proceeding seeking to prohibit respondent, Eugene W. Bergin, a Judge of the Monroe County Court, from enforcing certain ex parte orders which he granted in two pending criminal cases. The orders in question required the petitioner to deliver to the respondent Monroe

County District Attorney, and through him to respondent Kemp, defense counsel in the pending criminal matters, the files of the internal investigation section of petitioner police department which pertain to an incident that occurred in Rochester on May 24, 1978.

As a result of a neighborhood squabble two young Black women ended up inside the enclosure of a tennis court located on a playground at Rochester City School No. 6. The women were in possession of a small .22 caliber revolver which they claim they took from a neighbor who was harassing them and which apparently had been discharged. What then happened is the subject of conflicting stories from those present.

The principals are 21-year-old Odeall Griffin, her 18-year-old sister, Mary Ann Perry, a white uniformed police officer and an undercover Black police officer dressed in blue jeans and a number "18" rugby jersey. Concededly, there was an altercation between these individuals during which the police claim Ms. Perry pointed the handgun at one of them while, at the same time Ms. Griffin struck the other police officer. The police fired and Ms. Perry was struck and wounded.

As a result of this incident several things eventuated. First, Odeall Griffin was indicted for reckless endangerment in the first degree and assault in the second degree. Mary Ann Perry was indicted for criminal possession of a weapon in the second degree and menacing. Their trials on these charges are pending in Monroe County Court. Second, the internal investigation bureau of the Rochester Police Department conducted its own independent investigation of this incident taking statements from all present at the scene. It is the material obtained as a result of that investigation which is the subject matter of this proceeding before us.

■ ■ Before we attempt a resolution, it is first necessary to decide whether prohibition is an available remedy since we need not address the merits if this extraordinary remedy does not lie (Matter of B. T. Prods. v Barr, 54 AD2d 315, 317, affd 44 NY2d 226). An article 78 proceeding in the nature of prohibition is the proper method of challenging an action of a trial court when it is alleged that the court is acting, or about to act, without jurisdiction or in excess of its powers (La Rocca v Lane, 37 NY2d 575; Matter of Lee v County Ct. of Erie County, 27 NY2d 432; Siegel, New York Practice, § 559). It is not available to review an alleged error of law (Matter of

*State of New York v King,* 36 NY2d 59). Unfortunately, as the Court of Appeals has stated, there is not always a clear distinction between a court acting in error of law and a court acting in excess of its powers. However, it does appear here that petitioner has made sufficient claims that the trial court exceeded its powers in a matter over which it had jurisdiction *(La Rocca v Lane, supra,* pp 578-580). We exercise our discretion, therefore, to entertain jurisdiction because in addition to the claim that County Court exceeded its powers, the allegations respecting the gravity of the harm caused and the lack of any other practical method of redress persuade us that petitioner has sufficiently demonstrated its right to the availability of such relief if, on the merits, it is so entitled.

Turning to the merits, we recognize that the police and prosecution are separate autonomous agencies. Yet they are interrelated since each entity operates as a necessary part of the whole of the criminal justice system. In broad terms and especially as pertinent in this case, the police investigate, identify and apprehend criminal offenders in order to promote and preserve the peace. The prosecution is charged with the duty to see that the laws are faithfully enforced in order to maintain the rule of law (Amer Bar Assn Standards for Criminal Justice, The Prosecution Function, § 1.1, subd [a]).

There is, of course, the crucial requirement that co-operation exist between the interrelated agencies comprising the criminal justice system. All the agencies within the criminal justice system "must work together through liaison, co-operation and constructive joint effort" (Amer Bar Assn Standards for Criminal Justice, The Urban Police Function, § 1.1, subd [a]). Inasmuch as the District Attorney is required to "conduct all prosecutions for crimes and offenses cognizable by the courts of the county" (County Law, § 700, subd 1), the police ordinarily are bound to co-operate by furnishing to the prosecutor whatever evidence and records within the police department's possession relate to a crime being prosecuted.

The internal investigations file here is claimed to be confidential and not subject to this general policy. The claim of confidentiality is founded on the need to maintain public trust in the Rochester Police Department. The purpose of the internal investigation is to determine whether there has been misconduct on the part of a police officer. The police officers subject to such inquiry are required to co-operate fully and respond to all work-related questions asked. Confidentiality of

these files is necessary to encourage citizens and police officers to speak freely without fear of reprisal or disclosure.

█ The problem presented is one that calls for a balancing of interests. There is the public interest in encouraging co-operation with an internal investigation being conducted by the police department. Balanced against this is the duty of the District Attorney to make available to the defense in a criminal prosecution certain discoverable information (CPL 240.20, subds 1-3) at the risk of a dismissal or reversal upon conviction. Thus, those portions, if any, of the internal investigations file relevant to the guilt or innocence of the defendant must lose their privilege of confidentiality *(Roviaro v United States,* 353 US 53, 60-61; *People v Walsh,* 262 NY 140, 149-150; 8 Wigmore, Evidence [McNaughton rev], § 2374, pp 768-769; *Matter of Langert v Tenney,* 5 AD2d 586, app dsmd 5 NY2d 875; see *Brady v Maryland,* 373 US 83). Confidentiality is displaced by the necessity of disclosure in a criminal case to avoid the risk of false testimony or to secure useful testimony *(People v Keating,* 286 App Div 150, 153). The rule is different in civil cases *(Cirale v 80 Pine St. Corp.,* 35 NY2d 113, 118; *Jones v State of New York,* 58 AD2d 736). Absent military or national security secrets even a claim of absolute presidential privilege has been held a qualified one that yields to the primary constitutional obligation to do justice in a criminal prosecution *(United States v Nixon,* 418 US 683, 706-707). By this we do not mean, however, that the District Attorney is under a duty to make a complete accounting of all police investigatory work *(Moore v Illinois,* 408 US 786, 795) or deliver his entire file on a case to the defense *(United States v Agurs,* 427 US 97, 111). The prosecutor's duty is "to do justice" and to assure that the guilty not escape nor the innocent suffer. As stated in *Agurs,* "This description of the prosecutor's duty illuminates the standard of materiality that governs his obligation to disclose exculpatory evidence" *(United States v Agurs, supra,* p 111).

There is clearly an appropriate remedy by which the District Attorney could have sought to obtain this confidential police file, i.e., he could have subpoenaed it before County Court or the Grand Jury (CPL 610.20, 610.10, subd 3). Instead, he improperly proceeded by way of ex parte applications and obtained orders from the respondent Judge which directed petitioner police department to deliver this file over to the District Attorney's office where it would be available for

inspection by the defense. In our view County Court acted in excess of its powers in granting these applications and ex parte orders.

Accordingly, the petition for prohibition should be granted.

SIMONS, J. (concurring). I agree that County Court exceeded its jurisdiction in issuing these discovery orders. The appeal requires more specific discussion, however.

The information in police files is not available at will to the public, to a criminal defendant or even to a District Attorney. It may be "exempt property" (CPL 240.10, subd 3), "confidential" (Civil Rights Law, § 50-a, subd 1), or it may be privileged from disclosure (see *People v Keating,* 286 App Div 150, 152-153).

In this bizarre proceeding the District Attorney, defense counsel and the court agreed *inter se* to direct disclosure of the entire police departmental investigation file without notice to police officials. As a result two ex parte orders compelled production of some 68 enumerated reports, affidavits and items of evidence including the statements of the police officers involved in the shooting made during the departmental investigation. The orders did not provide for a prior review of the material either by the District Attorney or the court (see *People v Andre W.,* 44 NY2d 179). Rather, the court directed production of all 68 items and provided that the District Attorney make them available to defense counsel for inspection and copying. Respondents allege that such action was justified because the files contained *Rosario (People v Rosario,* 9 NY2d 286) and *Brady* material *(Brady v Maryland,* 373 US 83).

The orders went far beyond the court's jurisdiction and prohibition should be granted (see *Matter of Vergari v Kendall,* 76 Misc 2d 848, affd 46 AD2d 679). The District Attorney has no general right of discovery (see *Matter of Heisler v Hynes,* 42 NY2d 250, 253) and he had no statutory right of discovery in this case (see CPL 240.20). Indeed, he needed none. The desired evidence or witnesses could have been subpoenaed before the Grand Jury and if the subpoenas were unauthorized they could have been tested by a motion to quash. On the other hand if defendants were entitled to discovery they could have moved pursuant to statute (CPL 240.20).

Furthermore, the orders were premature insofar as they

directed the production of *Rosario* material. Witnesses' prior statements may be available eventually but the production of those statements must await the witnesses' testimony at trial (see *People v Thomas*, 65 AD2d 933). Specifically it should be noted that statements required of the police officers in the departmental proceedings (see *Donofrio v Hastings*, 54 AD2d 1110) may not be made available to the parties unless and until the police officers testify.

As for *Brady* material, it may be that certain exculpatory evidence exists which should be delivered to defendants. Upon appropriate notice they may reach evidence in the hands of third persons, either as a matter of right (see CPL 240.20, subd 1) or as a matter of discretion (CPL 240.20, subds 2-5) *(People v Prim*, 47 AD2d 409, 416-417, mod 40 NY2d 946; cf. *People v Leggett*, 55 AD2d 990).

An obligation of co-operation must exist between law enforcement agencies and the District Attorney, but that obligation notwithstanding, there was no legal warrant for these applications, apparently made orally, or the orders which granted them.

DILLON, P. J., CALLAHAN and WITMER, JJ., concur; SIMONS, J., concurs in an opinion in which DILLON, P. J., CALLAHAN and WITMER, JJ., also concur.

Petition unanimously granted, without costs.