## (December 5, 1980)

In the Matter of JOEL M. AURNOU, Petitioner, v RUSSELL R. LEGGETT, as Judge of the County Court of Westchester County, et al., Respondents.—Proceeding pursuant to CPLR article 78 to prohibit respondents from enforcing or seeking to enforce an oral order of the County Court, Westchester County, made November 21, 1980, which, in a pending criminal case, directed petitioner, as counsel for the defense, to produce certain material for an *in camera* inspection by the court in order to assist it in determining whether such material is discoverable by the People under CPL 240.40 (subd 1). The District Attorney has moved to dismiss the proceeding. Motion granted and petition dismissed, on the law, and as a matter of discretion, without costs or disbursements. At issue in this proceeding for a writ of prohibition is a midtrial ruling of constitutional import. Although we are of the view that the petitioner has presented a strong argument that compliance with the trial court's order would violate his client's privilege against self incrimination, the essential nature of the court's assertedly excessive exercise of power remains an alleged error of procedural or substantive law during the conduct of a criminal trial. The Court of Appeals has counseled that "it is crucial to distinguish between an error in procedure or substantive law during a litigation and the arrogation of power which is subject to correction by prohibition." *(La Rocca v Lane,* 37 NY2d 575, 580.) The distinction is often difficult to discern, for, as the *La Rocca* court declared (p 580), "there is no sharp line between a court acting in error under substantive or procedural law and a court acting in excess of its powers, if only because every act without jurisdiction or in excess of its powers in a proceeding over which is has jurisdiction of necessity involves an 'error of law' * * * [Nevertheless,] in extreme enough cases the distinction is easily apparent. At one extreme, a trivial error in excess of jurisdiction may be just that, trivial, and hardly worthy of treatment as an excess of power. On the other hand, at the other extreme, a gross abuse of power on its face and in effect may be in reality so serious an excess of power incontrovertibly justifying and requiring summary correction." Here, the trial court ordered that certain material be produced by de-

fendant for an *in camera* inspection, in order to assist the court in determining whether the material was discoverable by the People under CPL 240.40 (subd 1). We do not believe the order represents such a serious excess of power so vitally different from other trial rulings of constitutional import as to warrant our interfering with the trial. In addition, we are seriously concerned with the mischief that can result to the criminal justice system if a significant precedent is established permitting collateral proceedings to abruptly interrupt on-going trials. In our view, this court's imprimature upon such practices would constitute yet another step in the frustrations of the orderly administration of justice. If the challenged order reflects an excessive or unconstitutional exercise of power, it can be remedied like other errors and, as in other cases, which achieve lesser notoriety, by appeal from a final judgment of conviction should that eventuate. Rulings which implicate constitutional rights and issues are not unique to the instant case—they are integral ingredients of virtually every criminal trial. Thus, trial court refusals to suppress confessions, identifications and property allegedly seized in violation of the Fourth Amendment often place defendants in great jeopardy in claimed violations of sacred constitutional precepts. Nevertheless, none would argue that this court should make midtrial evaluations when such errors are claimed. Despite the dramatic terms in which the dissent describes the current circumstances, we are not convinced that the constitutional question posited requires special treatment by an appellate body during an on-going trial. As Chief Judge Breitel has written in the context of a prohibition challenge to a different alleged excess of power in a criminal proceeding: "Were allowance of this kind of proceeding to become a precedent, one would have to anticipate innumerable proceedings in all sorts of criminal matters to review allegedly prejudicial errors of law for which there would be no eventual appellate review or only appellate review after final judgments, and then only of conviction. No trial can be conducted while appellate courts by their own protracted proceedings review the alleged errors which may arise preliminary to the trial, during the trial, and before verdict and judgment." *(Matter of State of New York v King,* 36 NY2d 59, 63.) Accordingly, the petition is dismissed. Lazer, Mangano and O'Connor, JJ., concur.

Mollen, P. J. and Hopkins, J., dissent and vote to grant the writ of prohibition and deny the motion to dismiss, with the following memorandum: The petition presents a "substantial claim" of an act in excess of the court's jurisdiction and violative of defendant's privilege against self incrimination. Since such an important constitutional right is involved and, if the claim be established, the harm would be complete and irreparable upon disclosure of defendant's private letter even to the court, much less the District Attorney, we believe the writ of prohibition should issue *(La Rocca v Lane,* 37 NY2d 575; *Matter of Lee v County Ct. of Erie County,* 27 NY2d 432). Reaching the merits, it is abundantly clear that to require defendant to disclose to the trial court and, if the court then so determines, to the District Attorney, the purely private letter here involved [being] the so-called "Scarsdale letter" written by defendant to Dr. Tarnower on the morning of his death and thereafter retrieved by her from the post office] would indeed violate her right not to be compelled to be a witness against herself. To compel the turnover is to compel testimonial evidence in the form of defendant's declarations of her most private thoughts *(Boyd v United States,* 116 US 616, 634-635; *Schmerber*

*v California*, 384 US 757, 763-764; *Couch v United States*, 409 US 322, 327). As only just recently reiterated by the Court of Appeals, "production of an accused's purely private papers may not be compelled, for then the State extracts testimonial disclosure, invading the 'private inner sanctum of individual feeling and thought' * * * that the Fifth Amendment was designed to protect" *(People v Copicotto,* 50 NY2d 222, 229). The subject turnover order is ultimately based upon the reciprocal discretionary discovery provisions of CPL 240.40 (subd 1). Although only subdivision 2 of said section expressly renders enforcement of prosecutorial discovery subject to constitutional limitation, such a limitation must be deemed to apply to reciprocal prosecutorial discovery under subdivision 1 as well. Surely, the Legislature could not have intended that the defendant's constitutional rights be respected only when the prosecutor seeks judicial enforcement under the aforesaid subdivision 2 and not when he seeks additional and reciprocal discovery after the defendant has secured discretionary discovery. Although manifesting a laudatory sensitivity to constitutional requirements, the specifically articulated safeguard may be viewed as redundant in any event, as the statute must be presumed to accord with constitutional limitations. Indeed, in his Practice Commentaries to CPL 240.30 and 240.40, Joseph W. Bellacosa also notes the clear redundancy of express inclusion of such safeguard into the statutory language (McKinney's Cons Laws of NY, Book 11A, Supplementary Pamphlet [1972-1980]). In view of the foregoing, we conclude that prohibition lies and that the writ should issue to enforce that safeguard against compelled self incrimination provided by the statute and Constitution.