OPINION OF THE COURT
Michael C. Curci, J.
The defendant is charged with having committed assault in the third degree (Penal Law, § 120.00) and petit larceny (Penal Law, § 155.25) upon the complainant Father J. W. Canty, an ordained Episcopalian priest. The instant motion is for an order to preclude and prohibit, for all purposes, the complaining witness from appearing and testifying before the jury in *92 his clerical garb, and further, from testifying as to his vocation since such would result in a denial of the defendant’s right to a fair and impartial trial. Citing La Rocca v Lane (47 AD2d 243, affd 37 NY2d 575, cert den 424 US 968) wherein a defense counsel, a Roman Catholic priest, was precluded from appearing in his clerical garb before the jury in his client’s criminal action, the defendant contends that the possibility of prejudice — jurors viewing differently statements made by clergy from those made by nonclergy and ascribing a greater measure of veracity and personal commitment to the rightness of his cause — is greatly magnified and increased in the case at bar.
Defendant’s reliance upon the La Rocca decision (supra) is misplaced since the mere coincidence of clerical garb does not establish controlling authority. The situation here is at once distinguishable since it is a witness’ appearance and conduct, not an attorney’s, which is the subject of prospective regulation involving a possible infringement of his constitutional right to the free exercise of his religion.
An analysis of the Court of Appeals decision in La Rocca (supra) clearly indicates that all emphasis was upon a Judge’s authority to place limitations and regulations upon the conduct and appearance of an attorney before him. Noting that a Judge has the power to enforce order and control behavior in a courtroom and that an attorney, as an officer of the court, is subject to the control and direction of the Judge (Matter of Peck v Stone, 32 AD2d 506, 508), Chief Judge Breitel held in La Rocca (supra, p 582): "Thus, the lawyer is subject to the regulation of the Judge in matters of attire when that regulation is reasonably related to the preservation of order and decorum in the courtroom, the protection of the rights of parties and witnesses, and generally to the furtherance of the administration of justice.” (Emphasis added.)
The main thrust of the decision is that the appearance of an attorney in court is: "the occasion for him to discharge a particular function in the administration of justice; His function is not to displace his client but to serve as his agent in the litigation * * * To the extent to which it is possible, the improper displacement of client by attorney should be minimized by elimination of egregious assumed or real idiosyncracies of dress, appearance, status, or conduct. The purpose is, at least as to outward appearances, to place counsel in their *93 proper relation toward their clients.” (La Rocca v Lane, supra, p 582.)
It is interesting to note that: "The court did not undertake to prohibit [the defense attorney] from wearing the clerical collar as a spectator, as a witness, or as a party. Undoubtedly the relationship between the court and an attorney is more intimate and more subject to regulation than is the status of a spectator, witness, or party.” (La Rocca v Lane, 47 AD2d 243, 247, affd 37 NY2d 575, cert den 424 US 968; italics added.)
A careful reading of Chief Judge Breitel’s decision leads one to the inescapable realization that a Trial Judge has the authority to control an attorney’s conduct in open court and to impose restrictions on an attorney’s attire in so far as that attire reasonably relates to his proper function before the court.
The Appellate Division ruling in the La Rocca case (supra, p 249) stated that: "when he acts as an attorney * * * he enters on secular pursuits * * * subject to reasonable regulations”. Of course, had this court found that the La Rocca decision (supra) fell within the confines of the dictates of stare decisis, we would have followed it absolutely and directly.
The situation here is more analogous to that in Close-It Enterprises v Weinberger (64 AD2d 686) where the defendant, a devout adherent of the Jewish faith, chose to be excluded from the courtroom rather than obey a court order to remove his skullcap before the jury entered.
The court (pp 686-687) held it error to exclude the defendant who was obviously sincere in his belief that wearing the skullcap was a mandatory part of his religion.
"The defendant should not have been placed in the situation of having to choose between protecting his legal interests or violating an essential element of his faith. [Distinguishing this case from La Rocca v Lane, supra.] * * * We believe that the defendant’s right to the free exercise of religion, under the circumstances presented, was not outweighed by the right of all parties to a fair trial. There was no reason to believe that a fair trial could not have been achieved if the defendant, a party to the litigation, wore a skullcap.”
The possibility of prejudice resulting from an attorney appearing before a jury in clerical garb was commented upon by the Court of Appeals:
"A clergyman is accorded high status by most members of *94 our society. Whatever the character of the man or woman who wears the cloth, the cleric is accorded a measure of respect and trust unlike that which is given to those of other vocations. Consequently, it is understandable, but not condenable, that a juror might view differently statements made by a member of the clergy than those made by others, and might ascribe a greater measure of veracity and personal commitment to the rightness of his client’s cause.
"On the other side of the issue it is most unfortunate, but yet undeniable, that there exist religious prejudices. These prejudices, often insidious and usually denied, might spill over from a lawyer-cleric of whatever faith to the client.” (La Rocca v Lane, supra, p 583.)
If we should agree sub arguendo that the clerical garb may be to some degree prejudicial, we must examine to what degree it may be prejudicial. For it is the law that the defendant is entitled to a fair and impartial trial, not a perfect one. Let us compare the possible prejudice of a policeman’s uniform to clerical garb. Is clerical garb more or less prejudicial than a policeman’s uniform? Doctor Alice Padawer-Singer, Professor of Psychology at Long Island University, Director of Research in the New York County Model Jury Utilization Mnagement Demonstration Project, stated at a lecture at the Institute for Trial Judges that a study, supported by substantial data, showed experimental juries would believe a police officer’s testimony more than an average person. Assuming sub arguendo that this is accurate, there is no rule of law that a police officer must testify before a jury in mufti. I find no case that would hold a policeman as a witness precluded in the manner demanded by the defendant in this case. A policeman has no "right” per se to testify in uniform. It is judicial logic that allows that. In a sense a policeman represents the People.
This complaining witness, however, is in no way an agent of the State. He is an American citizen interposing a higher right than a police officer. That is, he contends the free exercise clause of the First Amendment protects his right to exercise his religion as he sees fit, and that a forced removal of his clerical garb violates that right. What, then, is the constitutional alternative alluded to in Scherbert v Verner (374 US 398, 406) to protect the defendant from possible prejudice occasioned by the priest’s garb and/or his profession while testifying before a jury?
*95 The solution to this problem is similar to that found in cases involving police officers as witnesses. The potential prejudice to a defendant may be circumvented by a carefully practiced voir dire coupled with strong limiting instructions to the jury concerning their evaluation of a witness’ credibility.
As stated by Justice Mangano, then a Supreme Court, Criminal Term, Trial Justice (La Rocca v Lane, 77 Misc 2d 123, 129): "To adopt the view that every jury panel will be biased as a matter of law, is to condemn our entire society to bigotry and to deny voir dire its function that has been hallowed by precedent and statute.”
The whole jury selection process — especially in the State of New York where the attorneys are given great latitude as distinguished from the Federal system — is geared with relative ease to ameliorate functional substantial prejudices. If such is not accomplished, error would be present. After that time a proper appeal would lie. But the court at this time would be anticipating any speculative inadequacies of counsel, the Assistant District Attorney, the entire array of jurors, the jury system and the court. The court refuses to antiepate so in this particular case. Mr. Justice Shapiro’s dissent expresses these thoughts best: "[t]he law is clear that the mere opportunity for prejudice raises no presumption that such prejudice exists * * * Here no evidence was offered to establish the existence of such bias, because the prospective jurors had not even been questioned as to whether they would be improperly influenced in determining the issues by reason of the * * * garb * * * The question here, however, is whether * * * the court may use that power to deny an attorney his First Amendment right to free exercise of religion because it fears (without proof) that his exercise of that right might possibly have the effect of appealing to the bias of some of the jurors, even though there are other available means of avoiding that possibility” (La Rocca v Lane, 47 AD2d 244, 256).
We note that Judge Gabrielli in his dissent (37 NY2d, at p 585) stated: "I vote to reverse, on the well-reasoned dissenting opinion by Mr. Justice J. Irwin Shapiro at the Appellate Division.”
Chief Judge Breitel’s decision was essentially that a trial court had the authority to regulate the conduct, and more particularly in that case, the attire of a lawyer. Therefore, this particular theory of Mr. Justice Mangano, of Criminal Term and of Mr. Justice Shapiro, at the Appellate Division, *96 was not refuted by Chief Judge Breitel in his decision. Chief Judge Breitel’s decision does not demonstratively deal with the alternative of the voir dire or the charge to the jury in the case of the attire of a witness. This possible prejudice, whichever way it cuts, is a classic for an American jury to resolve. That is to say, a jury of this defendant’s peers will be selected and undue prejudice that may preclude a fair trial will be weeded out through the voir dire and its many available challenges. As Mr. Justice Shapiro alluded at his dissent, should not this at least be primarily attempted? (See 47 AD2d, at p 256.) We must not allow every speculative prejudice to cripple our jury system. It is this court’s definite inclination that this question, like hundreds of other questions of the legion of possible prejudice, is one of the classical reasons why we, with the New York system, permit such an extensive voir dire of our juries by the attorneys for each side. We are satisfied that the resort to an extensive voir dire and a strong charge will most clearly set the tone and leave no substantial abridgment of this defendant’s rights. Therefore, there is a constitutional alternative available. An extensive voir dire in the selection of the jury, if properly done by the Assistant District Attorney, defense counsel and the court, could conceivably make the charge about to come later on in the trial anticlimactical. One apparently does not trust the American jury system if he believes that after an agonizing voir dire and a strong charge that the jury will be prepared to discount all the evidence, and the myriad factors gleaned from days of testimony, only to decide the case upon the fact that one witness wore a clerical collar.
The motion, for an order to preclude and prohibit, for all purposes, the complainant, Father J. W. Canty, from appearing and testifying before a jury in his clerical garb and collar, and further, from testifying as to his vocation, is hereby denied.