662 F.2d 144
 Rev. Vincent LaROCCA, esq., Plaintiff-Appellant,
v.
Eugene GOLD, individually and as District Attorney of Kings
County, New York, Robert N. Kaye, as Assistant District
Attorney, Kings County, New York, Jaime A. Rios, as
Assistant District Attorney, Kings County, New York, The
Supreme Court of the State of New York, Appellate Division,
Second Department, the Honorable Milton Mollen, Presiding
Justice, Honorable Moses M. Weinstein, in his capacity as
Associate Justice of the Supreme Court of the State of New
York, Appellate Division, Second Department, Supreme Court
of the State of New York, Second Judicial District, William
Thompson, Chief Administrative Justice, Honorable Harry J.
Donnelly, in his capacity as Acting Justice of the Supreme
Court of the State of New York, Defendants-Appellees.
 No. 49 Docket 81-7234.
 United States Court of Appeals,
Second Circuit.
 Argued Sept. 9, 1981.
Decided Oct. 14, 1981.
 
 Robert A. Destro, Milwaukee, Wis. (Catholic League for Religious & Civil Rights, Milwaukee, Wis., Rev. Vincent LaRocca, Legal Aid Society, Criminal Defense Division, Brooklyn, N. Y., Melvin L. Wulf, Clark, Wulf, Levine & Peratis, New York City, of counsel), for plaintiff-appellant.
 Ellen Bronzo, Asst. Atty. Gen., New York City (George D. Zuckerman, Asst. Sol. Gen., Robert Abrams, Atty. Gen. of the State of New York, New York City, of counsel), for State Court Appellees.
 Michael J. Halberstam, Asst. Dist. Atty., Brooklyn, N. Y. (Eugene Gold, Dist. Atty., Kings County, Brooklyn, N. Y., of counsel), for appellees Gold, Kaye and Rios.
 Before LUMBARD, MANSFIELD and VAN GRAAFEILAND, Circuit Judges.
 MANSFIELD, Circuit Judge:
 
 
 1
 Father Vincent LaRocca, an ordained Catholic priest who is licensed to practice law in the State of New York, appeals from a decision and order entered in the Eastern District of New York by Judge Jacob Mishler dismissing his civil rights complaint under 42 U.S.C. §§ 1983 and 1985(3), which sought declaratory and injunctive relief against the defendants-appellees, who include the District Attorney of Kings County and certain justices of the Appellate Division, Second Department, and of the Supreme Court of New York. LaRocca claims that in bringing about the entry of a state court decision that he not wear his Roman Catholic collar when appearing before a jury as a defense lawyer in a criminal trial the defendants have violated his rights under the First, Ninth, and Fourteenth Amendments. His complaint was dismissed by Judge Mishler on the ground that the state court decision does not violate the First Amendment. We affirm, but for different reasons.
 
 
 2
 Disposition of this appeal requires a review of the state court proceedings which led to the commencement of this suit. LaRocca, who was ordained a priest more than 20 years ago and at all times wears his Roman Catholic collar in public, was in 1973 admitted to practice law in the State of New York. Thereafter he was employed by the Legal Aid Society and in 1974 was assigned to represent a defendant facing trial on criminal charges in the Criminal Court of the City of New York. When he sought to wear his clerical collar in trying the case on behalf of his client before a jury, Judge Morgan Lane, after objection by the district attorney, directed him to remove the collar before proceeding further with the trial. LaRocca, contending that the order violated his own First Amendment right to free exercise of his religion and his client's constitutional right to counsel of his choice, obtained an order from the Criminal Term of the New York Supreme Court prohibiting the Criminal Court from enforcing its order, LaRocca v. Lane, 77 Misc.2d 123, 353 N.Y.S.2d 867 (Sup.Ct.1974). The Criminal Term judge (Justice Mangano) held that the effect of the trial judge's order was to deny the accused her constitutional right to counsel of her own choice, reasoning that bias could not be presumed from wearing of the clerical collar and that the parties would be protected against prejudice by exercise of their right of voir dire in the selection of the jury. His opinion did not reach the First Amendment issue.
 
 
 3
 Upon appeal the Appellate Division, Second Department, in a 3-1 decision reversed the Criminal Term, holding that the order prohibiting LaRocca from wearing clerical attire before a jury did not violate his client's constitutional right under the Sixth Amendment (incorporated in the Fourteenth Amendment) to be represented by counsel of her own choice or LaRocca's personal First Amendment right to free exercise of his religion. LaRocca v. Lane, 47 A.D.2d 243, 366 N.Y.S.2d 456 (2d Dept. 1975). With respect to the client's right, the majority reasoned that the client was represented by the Legal Aid Society, that she was not entitled to assignment of specific counsel, and that the Legal Aid Society, if LaRocca refused to remove his collar, could assign another attorney from its staff to represent the defendant. As to LaRocca's First Amendment claim the court held, after balancing the conflicting interests involved, that his right to free exercise of his religion must, to the limited extent of requiring removal of his collar (a requirement which the court viewed as reasonable), yield to the state's compelling interest in assuring the parties a fair and impartial trial, free of bias that might exist on the part of jurors who would view the clerical attire. LaRocca's argument that any risk of prejudice could be eliminated through voir dire of the prospective jurors was rejected. The court noted that, while such a voir dire might result in selection of some who would not be biased, voir dire can be grossly ineffective as a screening device and that LaRocca's clerical attire could affect witnesses. The dissent took the contrary view that, absent evidence of bias, a judicious use of voir dire could sufficiently protect the parties' right to a fair trial, making it unnecessary to deny LaRocca his First Amendment right.
 
 
 4
 The order of the Appellate Division was affirmed by the New York Court of Appeals, one judge dissenting, in an opinion by Chief Judge Breitel. LaRocca v. Lane, 37 N.Y.2d 575, 376 N.Y.S.2d 93, 338 N.E.2d 606 (1975). Judge Breitel noted that a "lawyer is subject to the regulation of the Judge in matters of attire when that regulation is reasonably related to the preservation of order and decorum in the courtroom, the protection of the rights of parties and witnesses, and generally to the furtherance of the administration of justice," 37 N.Y.2d at 582, 376 N.Y.S.2d at 100, 338 N.E.2d at 612. He further stated:
 
 
 5
 "A clergyman is accorded high status by most members of our society. Whatever the character of the man or woman who wears the cloth, the cleric is accorded a measure of respect and trust unlike that which is given to those of other vocations. Consequently, it is understandable, but not condonable, that a juror might view differently statements made by a member of the clergy than those made by others, and might ascribe a greater measure of veracity and personal commitment to the rightness of his client's cause.
 
 
 6
 "On the other side of the issue it is most unfortunate, but yet undeniable, that there exist religious prejudices. These prejudices, often insidious and usually denied, might spill over from a lawyer-cleric of whatever faith to the client. Although petitioner's client said she wished him to remain as her attorney despite this possibility, it is not the defendant in a criminal action but the court which must insure a fair trial. So fundamental is the guaranty of a fair trial that even in the absence of objection or exception by defendant or counsel an unfair trial must result in a reversal of a conviction (see People v. McLucas, 15 N.Y.2d 167, 172, 256 N.Y.S.2d 799, 802, 204 N.E.2d 846, 848; People v. Bradner, 107 N.Y. 1, 4-5, 13 N.E. 87, 88).
 
 
 7
 "The trial court in directing change of petitioner's garb if he persisted in trying the case before a jury, acted to preserve the right of both the defendant and the People to a fair trial. In so doing, the court of necessity limited defense counsel's right to free exercise of religion in that he was compelled to remove the symbol of his religious calling, a requirement of his calling which is not unconditional or beyond dispensation. The risk that a fair trial could not be had outweighed this incidental limitation." 37 N.Y.2d at 583-84, 338 N.E.2d at 613, 376 N.Y.S.2d at 101-02.
 
 
 8
 In 1976 the Supreme Court of the United States denied LaRocca's petition for a writ of certiorari. LaRocca v. Lane, 424 U.S. 968, 96 S.Ct. 1464, 47 L.Ed.2d 734 (1976).
 
 
 9
 In December of 1978 LaRocca represented Anna Rodriguez, who had been called to appear before a state grand jury. Despite the Court of Appeals' ruling against him in LaRocca v. Lane, supra, he informed the defendant Kaye, an Assistant District Attorney in Kings County, that he intended to wear his Roman Catholic collar while representing Rodriguez. District Attorney Gold thereupon sought an order from the defendant Justice Harry Donnelly prohibiting LaRocca from wearing his clerical collar before the grand jury. In an oral bench opinion Justice Donnelly relied principally on the Court of Appeals' decision in LaRocca v. Lane, supra, stating:
 
 
 10
 "The Court finds: One, the very presence in the Grand Jury of Reverend LaRocca attired in priestly garb, and, Two, his being referred to as the witness' counsellor, plus the witness' act of conferring with, being advised by, and consulting a Roman Catholic priest projects him prominently and unmistakeably in the eyes of the Grand Jurors as not merely the witness' attorney, but as a Roman Catholic priest espousing and defending her testimony." (App. 25).
 
 
 11
 LaRocca then appealed to the Appellate Division, which upheld the order, stating, "We cannot draw a distinction between this case and LaRocca v. Lane (37 N.Y.2d 575, 376 N.Y.S.2d 93, 338 N.E.2d 606, cert. den. 424 U.S. 968, 96 S.Ct. 1464, 47 L.Ed.2d 734)." In re LaRocca, N.Y.L.J., Jan. 23, 1979, at 14, col. 2 (App.Div. 2d Dep't). He did not seek further review in the New York courts.
 
 
 12
 Ms. Rodriguez was indicted on February 13, 1979. When she was to be brought to trial, LaRocca, still serving as her attorney, sought an order from Supreme Court Justice Hugh F. McShane, the trial judge, permitting him to wear his collar while representing her at the trial, which was to a jury. Justice McShane issued the order over the District Attorney's objection on December 17, 1979. In a detailed opinion Justice McShane took a position contrary to the New York Court of Appeals' decision in LaRocca. He held that an order prohibiting LaRocca from wearing his clerical collar in representing a defendant at a jury trial would substantially burden his free exercise of his religion and that the state's interest in securing a fair trial free from prejudice could adequately be protected through a voir dire of the members of the jury panel, relying on Justice Shapiro's dissenting opinion in LaRocca v. Lane and a more recent decision of the Appellate Division in Close-It Enterprises, Inc. v. Weinberger, 64 A.D.2d 686, 407 N.Y.S.2d 587 (2d Dept. 1978), which held that a party (as distinguished from an attorney) should be permitted to wear a skull-cap before a jury, since any potential prejudice could be protected against through a voir dire and instructions to the jury. Justice McShane further held that to prevent LaRocca from wearing his clerical collar before the jury would deny him his Fourteenth Amendment right to equal protection since it would result in his being treated differently from other attorneys admitted to the bar and thus deprive him of his right to seek his livelihood as a lawyer.
 
 
 13
 District Attorney Gold thereupon obtained an order from defendant Moses M. Weinstein, Associate Justice of the Appellate Division, Second Department, staying the enforcement of Justice McShane's order, which was on January 11, 1980, adjourned at the latter's request. On March 13, 1980, the Appellate Division granted Gold's Article 78 application to prohibit the enforcement of the McShane order, holding in a unanimous written opinion that it was "inappropriate for Justice McShane to review the decision of another justice of coordinate jurisdiction" and that "we find no change in circumstances that should have led Justice McShane to hold contrary to LaRocca v. Lane, supra. The decision of the Court of Appeals in that case continues to be dispositive of this issue." Gold v. McShane, 74 A.D.2d 860, 860, 426 N.Y.S.2d 504, 505 (2d Dept. 1980). On June 12, 1980, the New York Court of Appeals dismissed LaRocca's appeal to it "upon the grounds that no substantial constitutional question is directly involved."
 
 
 14
 In the meantime, on February 27, 1980, which was after Justice McShane's order had been stayed by Justice Weinstein but before the Appellate Division's order, LaRocca commenced the present action in the Eastern District of New York pursuant to 42 U.S.C. §§ 1983 and 1985(3), claiming that the defendants' actions violated his First, Ninth and Fourteenth Amendment rights. He sought (1) a permanent injunction restraining the defendants from prohibiting him from wearing a clerical collar before a jury without an evidentiary showing that the collar would have a prejudicial effect, (2) a declaratory judgment, and (3) attorneys' fees and costs. On March 2, 1981, Judge Mishler in a written opinion dismissed the action, holding that LaRocca's First Amendment right to wear a clerical collar was not absolute, but must yield to the state's interest in assuring a fair and impartial trial by exercise of its power to regulate the conduct of trials, including counsel's appearance. The district court found it unnecessary to decide whether it should abstain and whether the action was barred by the doctrine of res judicata.
 
 DISCUSSION
 
 15
 In the absence of any dispute as to the material facts, all parties ask us to resolve on the merits the issue of whether the defendants denied Father LaRocca his First Amendment right to free exercise of his religion by ordering that he may be required by a state trial judge, without a voir dire of the jury panel, to doff his clerical collar before representing a defendant before a jury in a criminal case. LaRocca argues, as he did before various New York courts, that these orders violate his right to free exercise of his religion, that they cannot be justified on the ground that they are necessary to protect the state's interest in assuring the parties a fair and impartial trial, since this interest can be protected by a voir dire of the jurors, and that the district court erred in holding to the contrary.[1]
 
 
 16
 The appellees, on the other hand, contend a contention that was urged by them and accepted by the state courts that First Amendment rights are not absolute and that a trial judge, in the exercise of his admitted power to regulate generally the conduct and appearance of counsel as an officer of the court, may without a voir dire conclude that a lawyer-priest's right to free exercise of his religion must yield to the limited extent that a judge may direct that removal of clerical garb is necessary to assure an impartial trial.
 
 
 17
 We must decline the invitation to decide this issue for the reason that appellant, having litigated the matter fully, fairly, thoroughly, and repeatedly before the state courts, is barred by the doctrine of collateral estoppel from now attempting once again to do so in the federal courts. Collateral estoppel was raised by the defendants as a defense in the present case and was briefed by the parties in the district court. Although that court chose to explore the merits, we are not precluded on appeal from affirming on the ground that LaRocca's claim is barred by the principle of issue preclusion. Schachter v. Whalen, 581 F.2d 35 (2d Cir. 1978).
 
 
 18
 Title 28 U.S.C. § 1738 requires that we give the same effect to the judicial proceedings of a state that they are given by the law or usage of the state.[2] Its requirement has been interpreted to apply to suits under 42 U.S.C. § 1983, Allen v. McCurry, 449 U.S. 90, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980); Winters v. Lavine, 574 F.2d 46 (2d Cir. 1978). We see no reason why it should not also apply to suits under § 1985. New York follows the general rule of collateral estoppel: once an issue of law or fact has been resolved against a party by a court, that party may generally not relitigate the issue in a subsequent lawsuit. Gramatan Home Investors Corp. v. Lopez, 46 N.Y.2d 481, 414 N.Y.S.2d 308, 386 N.E.2d 1328 (1979). For a party to be precluded from relitigating an issue two requirements must be met. First, the party must have had a "full and fair opportunity to contest the decision said to be dispositive of the present controversy." Gramatan Home Investors Corp. v. Lopez, supra, 46 N.Y.2d at 485, 414 N.Y.S.2d at 311, 386 N.E.2d at 1331. Second, the issue must be identical to the issue in the prior action. Id.
 
 
 19
 Turning to the issue of whether an order of a New York state court trial judge, issued without a voir dire, directing a lawyer-priest to remove his clerical collar before appearing before a trial jury, violates his First Amendment rights, that question was clearly and unequivocally resolved against LaRocca by the Appellate Division and the New York Court of Appeals in LaRocca v. Lane, supra, by Justice Donnelly and the Appellate Division in In Re LaRocca, supra, and by the Appellate Division in Gold v. McShane, supra. The fact that some of the parties other than LaRocca in these actions differ from those sued by him here does not preclude application of the doctrine of collateral estoppel. The requirement of mutuality of parties has been eliminated. Parklane Hosiery Co., Inc. v. Shore, 439 U.S. 322, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979); Blonder-Tongue Laboratories, Inc. v. University of Illinois Foundation, 402 U.S. 313, 91 S.Ct. 1434, 28 L.Ed.2d 788 (1971); Schwartz v. Public Administrator, 24 N.Y.2d 65, 298 N.Y.S.2d 955, 246 N.E.2d 725 (1969).
 
 
 20
 In LaRocca v. Lane LaRocca contended that a trial judge's order directing him to remove his clerical collar violated his First Amendment rights. LaRocca asserted that any possible prejudice could be cured by using voir dire to screen prospective jurors. The decision of the Appellate Division dealt with that argument at length and resolved it against LaRocca. 47 A.D.2d at 250-51, 366 N.Y.S.2d at 463-64. The Court of Appeals affirmed. Moreover, even if LaRocca had not raised any arguments relating to the use of voir dire in the Lane case, collateral estoppel would prevent him from doing so now because the issue whether a trial judge may constitutionally bar a lawyer-priest from appearing before a jury while wearing his clerical collar has already been determined against him in Lane, the trial judge having there exercised his discretion without using voir dire. The voir dire argument does not create a different "issue" for collateral estoppel purposes. See Restatement (Second) of Judgments § 68, Comment c (Tent. Draft No. 4, 1977).
 
 
 21
 The record is further clear that in Lane LaRocca was accorded a "full and fair opportunity" to litigate the very issue raised by him here. The case was considered by the Appellate Division and the Court of Appeals, both of which handed down written opinions resolving the issue against him. Thus we must conclude that the decision of this issue by the New York courts in Lane precludes LaRocca from relitigating it here.
 
 
 22
 Following Lane LaRocca had two more full and fair opportunities to litigate the issue, resulting in decisions resolving it against him. He argued the issue before Justice Donnelly, who decided it against him. That decision was affirmed by the Appellate Division, In re LaRocca, supra. Finally, LaRocca litigated the issue in the Appellate Division in defending Justice McShane's decision to allow him to wear his clerical collar, and again it was resolved against him. There can be no question but that collateral estoppel prevents LaRocca from relitigating the issue.
 
 
 23
 LaRocca next contends that requiring him to remove his clerical collar denies him equal protection of the law in violation of the Fourteenth Amendment because New York allows a party wearing a religious symbol (yarmulke or skull cap) to appear before a jury, Close-It Enterprises, Inc. v. Weinberger, 64 A.D.2d 686, 407 N.Y.S.2d 587 (2d Dept. 1978), and a witness to appear in clerical garb, People v. Drucker, 100 Misc.2d 91, 418 N.Y.S.2d 744 (Crim.Ct.N.Y.C.1979), leaving it to the parties to elicit through voir dire of the jurors whether they would be prejudiced. We disagree. Although cases involving parties and witnesses require the court to balance the state's compelling interest in assuring fairness of trials against its equally compelling interest in minimizing the burden on free exercise of religion, there are often factors present which justify the balance being struck in favor of permitting parties and witnesses to exhibit clerical or religious affiliations while prohibiting lawyers, who are officers of the court, from doing so. The first of these is the jury's task of appraising the credibility of parties and witnesses, which entitles it to take into account the person's demeanor, conduct, intelligence, and background. Broadcast Music, Inc. v. Havana Madrid Restaurant Corp., 175 F.2d 77 (2d Cir. 1949); Welch v. Tennessee Valley Authority, 108 F.2d 95, 101 (6th Cir. 1939). No such credibility issue should exist in the case of a lawyer who comports himself, as he must, in accordance with the Rules of Professional Responsibility. A lawyer, unlike a witness or party, does not speak for himself but for his client. The jury should have no need to judge the lawyer's credibility.
 
 
 24
 The two New York decisions relied upon by appellant are also distinguishable in other respects and consistent with LaRocca v. Lane, which was considered by the court in each case. In Close-It Enterprises the Appellate Division noted, "(t)here was no reason to believe that a fair trial could not have been achieved if the defendant, a party to the litigation, wore a skull cap. In fact, there was no objection by the plaintiff or his attorney." 64 A.D.2d at 687, 407 N.Y.S.2d at 588. In Drucker, the complaining witness' credibility regarding the alleged assault upon him was material. Moreover, in view of the judge's heavy reliance upon the decision of Justice Mangano in LaRocca v. Lane, which was reversed, and the dissenting opinion of Justice Shapiro, it is questionable whether Drucker, an opinion of the Criminal Court of the City of New York, represents the law of the state.
 
 
 25
 We have considered LaRocca's other contentions and find them to be without merit. Understandably he has not on this appeal argued that the defendants' conduct violates the Ninth Amendment, since it has no relevance to the issues before us. The argument that District Attorney Gold's institution of an Article 78 proceeding to bar enforcement of Justice McShane's decision somehow violated LaRocca's constitutional rights as an "attempt to embarrass and harass him" is frivolous, in view of the appellate court's order nullifying that decision.
 
 
 26
 The order of the district court is affirmed.
 
 
 
 [1]
 To the extent that LaRocca may argue that the state court decisions amount to a per se rule prohibiting him under any conditions from wearing his clerical collar before a state jury, the appellee justices have represented to us through counsel that a state trial judge's exercise of the power is discretionary. A claim based on a per se rule is therefore moot and may not be resolved by us. EPA v. Brown, 431 U.S. 99, 97 S.Ct. 1635, 52 L.Ed.2d 166 (1977)
 
 
 [2]
 Title 28 U.S.C. § 1738 (1976) provides in pertinent part:
 "The records and judicial proceedings of any court of any such State, Territory or Possession, or copies thereof, shall be proved or admitted in other courts within the United States and its Territories and Possessions by the attestation of the clerk and seal of the court annexed, if a seal exists, together with a certificate of a judge of the court that the said attestation is in proper form.
 "Such Acts, records and judicial proceedings or copies thereof, so authenticated, shall have the same full faith and credit in every court within the United States and its Territories and Possessions as they have by law or usage in the courts of such State, Territory or Possession from which they are taken."